IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KENT WILLIAM HUBBARD,

                          Plaintiff,                          OPINION AND ORDER

    v.                                                              19-cv-784-wmc

MEDICREDIT INC.,

                          Defendant.

*Pro se* plaintiff Kent William Hubbard filed this lawsuit against defendant MediCredit Inc., claiming violations of his rights under:  the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq.; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq.; and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. Ch. 559 (Part VI).  Since Hubbard is proceeding without prepayment of the filing fee, his complaint must be screened to determine whether any portion is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  Even construing Hubbard's allegations generously, he has failed to state a claim cognizable under any of these statutes and his lawsuit must be dismissed.  Although the court is skeptical that Hubbard will be able to state a claim, he will nevertheless be given twenty-one days to amend his complaint to correct the deficiencies described in this opinion.

ALLEGATIONS OF FACT[1]

Hubbard is a Wisconsin resident.  He alleges that MediCredit, a Missouri debt collection agency, entered into a "unilateral contract" with him and then breached it by not providing information he requested regarding a debt he allegedly owes.  (Dkt. #1 at 1-2.)  Hubbard adds that MediCredit used the United States Postal Service and sought financial gain in their interactions.  (*Id.* at 2.)  Finally, he requests money damages and an order requiring MediCredit to stop contacting him.  (*Id.* at 3.)

In addition to these allegations, Hubbard attaches to his complaint a series of letters between MediCredit and him.  The first letter, dated June 5, 2019, is from MediCredit to Hubbard, advising that MediCredit is a debt collector attempting to collect a debt.  (Dkt. #1-2, at 12.)  MediCredit further explains that St. Mary's Hospital in Madison, Wisconsin, has placed Hubbard's unpaid account with MediCredit for collections, and he may dispute the debt within 30 days.  (*Id.*)

Hubbard then sent three letters to MediCredit dated June 20, July 5, and July 15, 2019.  In the first letter, he indicates that he does not give MediCredit permission to contact him by telephone.  (Dkt. #1-1 at 1.)  In that and in each subsequent letter, Hubbard also requests verification of the debt, as well as the name of the individual authorized to represent MediCredit.  (*Id.* at 1, 3-6.)  Hubbard further writes that unless MediCredit provides this information, he will consider MediCredit "a third[-]party

---

[1] In addressing any *pro se* litigant's complaint, the court must read the allegations generously, resolving ambiguities and drawing reasonable inferences in plaintiff's favor.  *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

interloper," lacking legal standing and first-hand knowledge of the matter, who is liable for Hubbard's damages.  (*Id.* at 1, 3, 5.)  Hubbard's letters further asset that, among other things, a failure of MediCredit to respond timely "will constitute your agreement" that: (1) the original claim "was fraudulent"; (2) you are "culpable"; and (3) you will "pay all fee schedules," remove "any negative remarks made to a credit reference agency," and "no longer pursue this matter any further." (*Id.*)

In turn, on July 9, July 17, and August 1, 2019, MediCredit sent Hubbard letters with copies of an itemized bill from St. Mary's Hospital.  (Dkt. #1-2, at 5, 8.)  The content of the three cover letters is identical and consists of just a few sentences:

> Please review the **Itemized Statement** that you requested on the outstanding bill(s) owed to **ST. MARYS HOSPITAL-MADISON**.
>
> If there is anything else I can do to assist you in resolving this matter or if you have any questions please let me know.
>
> Please be advised that some accounts may be written off to a zero balance on the itemized statements at the time the accounts are placed with our company.

(*Id.*)

In his fourth letter, labeled "Notice of Pending Lawsuit" and dated August 28, 2019, Hubbard informs MediCredit that he intends to file a lawsuit claiming violations of the FCRA, the FDCPA and the FCCPA, but would give MediCredit an opportunity to cure via settlement.  (Dkt. # 1-2, at 11.)  Neither Hubbard's letter nor his complaint explain the basis for suing under any of these statutes.

OPINION

Federal Rule of Civil Procedure 8 requires that a complaint contain a "'short and

3

plain statement of the claim' sufficient to notify the defendants of the allegations against them and enable them to file an answer." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (quoting Fed. R. Civ. P. 8(a)).  Moreover, dismissal is proper "if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'" *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In determining whether the details in the complaint satisfy this standard, a district court should consider only factual allegations and disregard "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007).  A complaint consisting of nothing more than "naked assertions devoid of further factual enhancement" must be dismissed for failing to meet the requirements of Rule 8.  *Id*.  Because Hubbard seeks to proceed against MediCredit on claims under § 1692c of the FDCPA, under § 1681b of the FCRA, and under the FCCPA, the court will address each claim in turn.

## I.   The Fair Debt Collection Practices Act

The FDCPA protects consumers from abusive means of collecting debts.  *See* 15 U.S.C. § 1692(e).  Under § 1692g(b), if a consumer disputes a debt in writing within thirty days of being informed of the debt, a debt collector must cease all efforts of collection until the collector receives verification of the debt, a copy of the judgment, or the name and address of the original creditor, and mails that information to the consumer.  In particular, plaintiff purports to be proceeding against defendant under § 1692c, which prohibits continuing to attempt to collect a debt despite plaintiff's "cease communications" notice. Under § 1692c(c), "[i]f a consumer notifies a debt collector in writing that the consumer

4

refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." *Id.* However, the FDCPA also provides for three types of permissible communications from a debt collector to a consumer even after invoking § 1692c(c)'s cease-communication protection:

> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

§ 1692c(c)(1)-(3).

Here, plaintiff appears to be pursuing an FDCPA claim based on defendant's July 9, July 17, and August 1, 2019, letters to plaintiff that each attached the itemized bill from St. Mary's Hospital. However, plaintiff has not alleged that he had directed defendant, and the letters attached to his complaint do not ask defendant, to cease all communications with him. To the contrary, his June 20, 2019, letter *affirmatively asked defendant to provide* verification of the debt (*id.* at 1), and his subsequent two letters arguably implicitly do so (*id*. at 3, 5). To be fair, plaintiff did request in the first letter that defendant not call him on the telephone (dkt. #1-1 at 1), but nowhere in the pleading or attachments is there any suggestion that defendant ever contacted plaintiff by phone. Regardless, *none* of the three letters contain an express request that defendant cease communications in writing, which is all plaintiff alleges occurred here. Moreover, the only reasonable inference to be drawn

from plaintiff's pleading and defendant's attached three response letters and medical bills is that defendant was responding to plaintiff's request that defendant verify the debt.  Since neither the pleading nor these communications support an inference that a representative of defendant communicated with plaintiff in violation of § 1692c, he will not be permitted to proceed on that claim.

## II. The Fair Credit Reporting Act

Plaintiff also purports to be proceeding against defendant under § 1681b of the FCRA, which specifies the circumstances under which a consumer reporting agency may release credit information.  For example, a reporting agency can provide a consumer credit report to a person who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the . . . collection of an account of, the consumer."  15 U.S.C. § 1681b(a)(3)(A). This section also provides that a person must have a permissible purpose to "use or obtain a consumer report."  15 U.S.C. § 1681b(f).

Since defendant is not a reporting agency, the court infers that plaintiff intends to pursue a claim under the FCRA based on defendant seeking out and using his consumer report without a permissible purpose.  In fact, in each of his first three letters to defendant, plaintiff asks for the name of defendant's representative and confirmation of the "actions s/he has taken in relation to this account."  (Dkt. #1-1 at 1, 3, 5.)  But neither plaintiff's complaint nor the letters suggest that defendant ever actually obtained plaintiff's consumer report, suggest why defendant did so, or how that information was used.  Moreover, to the extent a collection agency obtains a consumer report to collect on a debt, that is generally

6

a permissible purpose under § 1681b(a)(3)(A). *Gillen v. Kohn Law Firm*, No. 13-cv-373-wmc, 2015 WL 1430375, at *6 (W.D. Wis. March 27, 2015) (collecting cases).

Regardless, since plaintiff does *not* affirmatively allege that defendant obtained and used his consumer report without a proper purpose *or* allege any facts from which this court could reasonably draw that inference, there is no reasonable grounds to hold defendant liable for a violation of § 1681b.

### III. The Florida Consumer Collection Practices Act

Finally, plaintiff references the FCCPA, a Florida statute prohibiting debt collectors and creditors from engaging in certain debt collection practices in that state. *See* Fla. Stat. § 559.72 (listing prohibited practices). The statute supplements the FDCPA with respect to collection practices in Florida. *See* Fla. Stat. § 559.552 ("Nothing in [the FCCPA] shall be construed to limit or restrict the continued applicability of the federal [FDCPA] to consumer collection practices in this state. This part is in addition to the requirements and regulations of the federal act.")

Because of the similarities between the two statutes, courts interpreting the state law give "due consideration and great weight" to federal interpretations of the FDCPA. Fla. Stat. § 559.77(5). The statutes are not identical, however; so a violation of the federal statute does not automatically constitute a violation of the Florida statute in situations where the state statute is distinguishable, nor does a failure to violate the FDCPA mean one could not still violate the FCCPA. *Barilla v. Seterus, Inc.*, No. 19-cv-46-FtM-38NPM, 2019 WL 4060154, at *3 (M.D. Fla. Aug. 28, 2019); *Kelly v. Duggan*, 282 So. 3d 969, 971 (Fla. 1st DCA 2019). For example, § 1692d(6) of the FDCPA requires a debt collector to

affirmatively disclose his or her identity when calling a debtor, and Fla Stat. § 559.72(15) provides only that a debt collector cannot refuse the debtor's request for identifying information. *See Read v. MFP, Inc.*, 85 So. 3d 1151, 1153-55 (Fla. 2d DCA 2012) (comparing the identification requirements under the FCCPA and the FDCPA).

Plaintiff does not cite to a specific section of the FCCPA, and the court cannot discern from his complaint and attached documents how plaintiff may proceed under this Florida law.  For example, plaintiff does not allege, and his attachments do not indicate, that any of the events or either of the parties are connected to Florida.  Moreover, the court cannot reasonably infer from plaintiff's conclusory, breach-of-contract allegation in the pleading, or from defendant's letters to plaintiff, that defendant engaged in any of the specific debt collection practices prohibited under the FCCPA, such as threatening violence, using willfully abusive or vulgar language, or communicating with the debtor between 9:00 p.m. and 8:00 a.m. without consent.  *See* Fla. Stat. § 559.72(2), (8), (17).  More to the point, were the court to allow plaintiff to proceed on his complaint as pleaded, defendant would not have reasonable notice of the factual basis for his claim under the FCCPA as required under Rule 8.  Accordingly, this final claim must also be dismissed.

## IV. Opportunity to Amend

Although it appears that plaintiff does not have grounds to proceed on any of his claims, plaintiff's allegations are so sparse that the court will give him the chance to provide more details about each of his proposed claims.[2]  Plaintiff will have three weeks to file an

---

[2] As to the FCCPA claim in particular, plaintiff should be mindful of the relevant differences between the sections of the relevant state and federal statutes should he still wish to proceed.

8

amended complaint that provides additional, specific allegations as to exactly what defendant has done to violate plaintiff's rights under the federal and state laws he cites in his current pleading.

Plaintiff should draft his proposed amended complaint as if he is telling a story to someone who knows nothing about his situation and state *all* his factual allegations in the complaint, rather than rely on attachments.  This means that he should explain:  (1) what happened to make him believe he has a legal claim; (2) when it happened; (3) who did it; (4) why; and (5) how the court can assist him in relation to those claims.  Plaintiff should also set forth his allegations in separate, numbered paragraphs using short and plain statements.  After he finishes drafting his amended complaint, plaintiff should further review it and consider whether it could be understood by someone who is not familiar with the facts of his case.  If not, he should make necessary changes.  If plaintiff does this, the court will take his amended complaint under advisement for screening pursuant to 28 U.S.C. § 1915(e)(2).  If plaintiff fails to respond to this order by **June 9, 2020**, this case will be closed.

ORDER

IT IS ORDERED that:

1) *Pro se* plaintiff Kent William Hubbard's request for leave to proceed *in forma pauperis* in this action is DENIED and his complaint is DISMISSED without prejudice for failure to meet the requirements of Federal Rule of Civil Procedure 8.

2) Plaintiff may have until **June 9, 2020,** to submit an amended complaint that meets the requirements of Rule 8.  If plaintiff fails to respond by that deadline, then the clerk of court is directed to close this case for failure to prosecute it.

Entered this 19th day of May, 2020.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge